IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BILL and EDITH RAMSEY, and
SUNRISE ARKANSAS INC. PLAN SPONSOR          PLAINTIFFS

v.                  No. 4:07-CV-00790 JMM

SOUTHEASTERN EMPLOYEE BENEFIT
SERVICES, INC., FIRST CHARTER
CORPORATION, PAYCHEX, INC., and
STEPHENS INC. d/b/a STEPHENS
CAPITAL MANAGEMENT          DEFENDANTS


STEPHENS INC. d/b/a STEPHENS
CAPITAL MANAGEMENT          THIRD-PARTY
                                                            PLAINTIFF

v.

SUNRISE ARKANSAS, INC.
DEFINED BENEFIT PLAN,
ITW SAVINGS AND INVESTMENT PLAN, and
ILLINOIS TOOL WORKS INC. MASTER
PENSION TRUST          THIRD-PARTY
                                 DEFENDANTS

## ORDER

Pending is Stephens Inc.'s ("Stephens") Motion for Summary Judgment on all claims in Plaintiffs' Amended Complaint based on Mootness, docket # 92, Southeastern Employee Benefit Services, Inc., First Charter Corporation and PayChex, Inc. (collectively, "SEBS") join in Stephens' Motion for Summary Judgment on all claims, docket # 107. Plaintiffs, Bill and Edith Ramsey and Participants Sunrise Arkansas, Inc. Plan Sponsor, request leave to file an amended complaint, docket # 89. For the reasons stated herein, the motions for summary judgment are GRANTED. Plaintiffs' motion for leave to file an amended complaint is DENIED.

## Facts

Plaintiffs, Bill and Edith Ramsey filed suit in state court on July 27, 2007, purporting state common law claims based upon alleged acts and omissions in connection with the creation and administration of the Sunrise Employee Benefit Plan ("Plan"). On August 31, 2007, the Defendants removed this action to this court on the basis of ERISA preemption. In September 2007, Defendants Stephens and SEBS filed separate motions to dismiss alleging that although ERISA governed the Plaintiffs' causes of action, the Plaintiffs had failed to state an ERISA cause of action as a matter of law. Plaintiffs moved to remand the case to state court. By Orders entered January 24, 2008, the Court denied the Ramseys' motion to remand, holding that ERISA preempted Plaintiffs' state law claims; denied the Defendants' motions to dismiss, and ordered the Plaintiffs to file an amended complaint to state a viable cause of action under ERISA.

On February 13, 2008, Plaintiffs filed their Amended Complaint alleging three ERISA claims. The Ramseys were participants in the Plan when they filed their original and amended complaint and Sunrise Arkansas, Inc. joined as a plaintiff in the Plaintiffs' Amended Complaint. The first cause of action, based on ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) "seek[s] to recover from Defendants benefits due to them - as represented - under the terms of the Plan." The second cause of action, based on ERISA §502(a)(2), 29 U.S.C. §1132(a)(2) alleges breach of fiduciary duties and seeks to recover "any losses to the Plan resulting from each breach including but not limited to the underfunded liability and any profits made by Defendants through the use of the assets of the Plan." The third cause of action requests injunctive and equitable relief pursuant to

ERISA §502(a)(3), 29 U.S.C. §1132(a)(3). Defendants filed motions to dismiss Plaintiffs' Amended Complaint. These motions were denied by Order entered September 26, 2008.

On or about January 31, 2008, Sunrise entered into a Stock Purchase Agreement ("Agreement") with Illinois Tool Works, Inc. ("ITW"). The Agreement provided for the transfer of all of the outstanding Sunrise stock to ITW in exchange for payment of $12,000,000. At the time of the sale of Sunrise stock to ITW, the present value of the accrued benefits owed to the beneficiaries of the Plan exceeded the assets in the Plan by $1,500,000, as determined by ITW. ITW insisted that the Agreement include terms requiring that the Sunrise Plan be fully funded and terminated for the sale to continue. The Agreement provided that ITW would withhold from the purchase price $1,500,000 to cover the shortfall in the Plan. Following the stock purchase, ITW deposited just over $1,500,000 in the Plan's Stephens' account to cover the unfunded liabilities of the Plan. ITW withheld this amount from the $12,000,000 it paid for Sunrise.

On November 6, 2008, Stephens filed a Third Party Complaint against Sunrise Arkansas, Inc. Defined Benefit Plan, ITW Savings and Investment Plan and Illinois Tool Works, Inc. Master Pension Trust seeking a declaratory judgment and indemnification under the terms of four Investment Management and Plan Services Agreements between Stephens and the Plan.

In late November 2008, the new trustee of the Plan instructed Stephens to disburse the funds to the Sunrise beneficiaries ("Distribution Letter"). On December 1, 2008, Stephens filed a motion to deposit the funds of the Plan into the registry of the

Court under Fed. Rule Civ. P. 67.  The Plaintiffs and the Third Party Defendants opposed the motion.  A hearing was held on January 23, 2009 and on January 28, 2009 the Court entered an Order denying Stephens' motion.   ITW made the final contribution necessary to fully fund the Plan in 2009.  Stephens then issued the distribution checks to the Ramseys and the other participants in the Plan as requested by the Distribution Letter.

The Ramseys claim that pursuant to the terms of the Agreement, they forfeited $1,500,000 of the agreed sales price of $12,000,000 to ITW in order to cover the unfunded liabilities of the Plan at the time of the sale.  As a result, the Ramseys claim that they did not receive their full retirement benefits. Plaintiffs filed a motion for leave to file a second amended complaint to reflect these recent developments.  The proposed second amended complaint includes new factual allegations but asserts the same three ERISA causes of action as alleged in the Amended Complaint.

Stephens claims that the Ramseys received all of the benefits provided for them under the terms of the Plan through lump-sum distributions made pursuant to the Distribution Letter.  As a result of the termination of the Plan, none of the Plaintiffs is a current ERISA participant in, beneficiary of, or fiduciary to the Plan.  The Plan no longer exists and the Plan had no unfunded liabilities to any Plan participant at the time it was terminated.  Further, Sunrise no longer sponsors and administers the Plan, the Ramseys no longer work at Sunrise and no longer participate in the Plan and Stephens no longer provides any services to the Plaintiffs or the Plan.  Stephens claims that there is no likelihood that Stephens' alleged conduct with regard to Plaintiffs or the Plan will recur

4

in the future. Based upon these allegations, Stephens and SEBS claim that the Plaintiffs' ERISA claims are moot and Plaintiffs' proposed second amended complaint is futile.

## Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence,

5

> specific facts, showing that there is a genuine dispute on
> that issue. If the respondent fails to carry that burden,
> summary judgment should be granted.

*Id.* at 1339. (*quoting City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (*citations omitted)(brackets in original*)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### Discussion

Article III of the Constitution limits the jurisdiction of federal courts to consideration of ongoing "cases" or "controversies." " A case may become moot at any time. '[I]t is not enough that a dispute was very much alive when suit was filed. . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit.'" *Comfort Lake Ass'n v. Dresel Contracting, Inc.*, 138 F. 3d 351, 354 (8th Cir. 1998), *quoting*, *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances ... and a federal court can no longer grant effective relief,' the case is considered moot." *Ali v. Cangemi* 419 F.3d 722, 723 -724 (8th Cir. 2005) *quoting, Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994). "If an issue is moot in the Article III sense, [ the Court has] no discretion and must dismiss the action for lack of jurisdiction. *Id*., *see, Powell v. McCormack*, 395 U.S. 486, 496 n. 7 (1969).

Defendants argue that the distribution of benefits and termination of the Plan fully satisfied the claims asserted by Plaintiffs in the amended complaint and rendered

6

Plaintiffs' amended complaint moot and the second amended complaint futile. Plaintiffs claim that they retain actionable ERISA claims, because they funded the $1,500,000 shortfall which allowed for the distribution of benefits. Plaintiffs argue that they are former employees who have a "colorable claim" to vested benefits.

Only plan participants, beneficiaries or fiduciaries may bring the civil actions Plaintiffs assert. 29 U.S.C. §1132(a)(1), (a)(2) and (a)(3). Plaintiffs argue that as former employees with a colorable claim for vested benefits, they remain "participants" entitled to bring a civil-enforcement action.[1] Under ERISA a "participant" is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan. . . . " 29 U.S.C.§ 1002(7). The Supreme Court construed the statutory definition of "participant" in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989):

> In our view, the term "participant" is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment, or former employees who have ... a reasonable expectation of returning to covered employment or who have "a colorable claim" to vested benefits. In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

*Id*. at 117-118, *internal quotations and citations omitted*. Applying this definition to the term "participant, " the Eighth Circuit Court of Appeals held that "current participant status is the relevant test" and former employees are no longer "participants" under

---

[1] Plaintiffs do not allege that they are entitled to proceed as fiduciaries to or beneficiaries of the Plan.

ERISA. *Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir.), *cert. denied*, 516 U.S. 823 (1995) (The Court acknowledged that an exception may apply when the fiduciary's breach of duty deprived them of participant status, but "[i]t does not apply to claimants whose loss of participant status resulted from their own actions."). S*ee also*, *Gilquist v. Becklin*, 675 F. Supp. 1168 (D.Minn. 1987), *affirmed mem.*, 871 F. 2d 1093 (8th Cir. 1988) (finding that a plaintiff who has withdrawn from the plan and received a lump sum payment does not have standing under ERISA to raise a claim of breach of fiduciary duty).

Plaintiffs urge the Court to follow the reasoning of the United States Supreme Court in *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 128 S.Ct 1020 (2008). In *LaRue,* the Supreme Court held that a participant in a defined-contribution plan may bring a breach of fiduciary duty claim under §1132(a)(2) for alleged losses to the participant's individual account. In a footnote, the Court noted that the defendant had filed a motion to dismiss arguing that the case was moot because the plan participant had withdrawn the funds in his plan after the writ of certiorari was granted, thus, he was no longer a "participant." The Court rejected the defendant's motion stating that "[a] plan "participant," as defined by §3(7) of ERISA, 29 U.S.C. §1002(7), may include a former employee with a colorable claim for benefits." *Id.* at ____, 128 S.Ct. at 1026, n.6.

In an earlier decision, the Supreme Court held that a participant in a disability plan that paid a fixed level of benefits (a defined benefit plan) could not bring suit under §501(a)(2) of ERISA to recover consequential damages arising from a delay in the processing of her claim. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134

(1985).  In *Russell*, the Court concluded that §502(a)(2) protects the financial integrity of the plan, with remedies that protect the entire plan, rather than an individual beneficiary. *Id*. at 142.

The *LaRue* Court distinguished its holding in *Russell* finding that the plaintiff in *Russell,* a participant in a defined benefit plan, had "received all of the benefits to which she was contractually entitled, but sought consequential damages arising from a delay in the processing of her claim."  *LaRue*, 552 U.S. at  ____, 128 S. Ct. at 1024.  In contrast, in *LaRue*, a participant in a defined contribution plan sought damages for breaches of fiduciary obligations that allegedly resulted in an adverse impact on the value of the plan assets in the participant's individual account.  The Court recognized that the "entire plan" language in *Russell* speaks to the impact of §409 on plans that pay defined benefits. " The Court stated:

> Misconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan. It was that default risk that prompted Congress to require defined benefit plans (but not defined contribution plans) to satisfy complex minimum funding requirements, and to make premium payments to the Pension Benefit Guaranty Corporation for plan termination insurance.
>
> For defined contribution plans, however, fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive. Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409. **Consequently, our references to the "entire plan" in *Russell*, which accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context.**

*LaRue,* 128 S.Ct. at 1025, *citations omitted, emphasis added*.

9

The Plan at issue herein was indisputably a defined benefit plan. The termination of the Plan and the Ramseys' loss of current participant status, by receipt of the benefits due under the terms of the Plan, resulted from the Plaintiffs own actions, thus, the Ramseys' are not former participants with a colorable claim for benefits. *See*, *Adamson v. Armco, Inc*., 44 F.3d at 655. Further, the damages sought are not benefits due under the terms of the Plan but are consequential damages allegedly resulting from the sale of the company and the termination of the Plan.

Based upon current precedent in the Eighth Circuit Court of Appeals as reflected in *Adamson v. Armoco, Inc*., 44 F.3d 650 (8th Cir. 1995) and the United States Supreme Courts decision in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) as explained in *LaRue v. DeWolff, Boberg & Assocs*., 128 S.Ct. 1020 (2008), the Court finds that the Plaintiffs claims are moot as they are no longer "participants" as defined by ERISA. The distribution of benefits and termination of the Plan fully satisfied the claims asserted by Plaintiffs in the amended complaint and rendered Plaintiffs' amended complaint moot and the second amended complaint futile.[2]

## Conclusion

For these reasons, Defendants motions for summary judgment are granted, docket #'s 92 and 107, Plaintiffs' motion for leave to file a second amended complaint is denied, docket # 89.

IT IS SO ORDERED this 7th day of January, 2010.

---

[2] Futility is a valid basis for denying leave to amend. *U.S. ex rel. Roop v. Hypoguard USA, Inc*., 559 F.3d 818 (8th Cir. 2009).

_____
James M. Moody
United States District Judge